UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

XZAVIER GLOVER,

                    Plaintiff,

        v.                                             Case No. 26-cv-192-pp

CO HIASNY, *et al.*,

                    Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 4) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

Plaintiff Xzavier Glover, who is incarcerated at Waupun Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants had violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, addresses his motion to appoint counsel, dkt. no. 4, and screens his complaint, dkt. no. 1.

## I.      Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1).

1

He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On February 6, 2026, the court ordered the plaintiff to pay an initial partial filing fee of $49.56. Dkt. No. 6. The court received that fee on February 17, 2026. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order.

## II.    Screening the Complaint

### A.    Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

2

accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.      The Plaintiff's Allegations

The plaintiff was incarcerated at Racine Correctional Institution during the events described in the complaint. He sues CO Hiasny, Lt. Flarity and Sgt. Martan. Dkt. No. 1 at 1.

The plaintiff alleges that on October 13, 2024, Aurora Healthcare prescribed him Famotidine to treat his acid reflux. Id. at 2. The plaintiff's provider at Racine allegedly recommended that he take the medication once a day. Id. The plaintiff states that he began to experience side effects

3

immediately—confusion, hallucinations, severe abdominal pain, nausea, disorientation and vomiting. Id. He says that he wrote to the HSU (health services unit) complaining of these side effects and on October 14, 2024, Nurse Moore notified the plaintiff's provider, Advanced Nurse Practitioner Randolph, about the side effects. Id. On October 24, 2024, Randolph allegedly "thought it best to discontinue the Famotidine." Id.

The plaintiff alleges that on October 19, 2024, he suffered extreme side effects after receiving Famotidine, including headaches, vomiting, confusion, hallucination, lack of energy and dizziness. Id. at 3. He says that his suffering was so violent that his next-door neighbor, Mr. Jordan, pushed the call emergency button to request medical attention for the plaintiff. Id. Sgt. Martan allegedly contacted HSU, but they didn't arrive. Id.  Instead, the distributing officer allegedly left the plaintiff to suffer. Id. The plaintiff says that the only person who arrived was Lt. Flarity, who witnessed the plaintiff in pain and vomiting blood but did not obtain medical aid. Id. The plaintiff states that he was left to suffer in his cell in the RHU (restricted housing unit--segregation). Id.

The plaintiff alleges that five days later, on October 24, 2024, during evening "Med pass," CO Hiasny "distributed the plaintiff, verbalizing HSU gave him permission, even after the plaintiff warned him the medication had been discontinue[d]." Id. (as in original). The plaintiff states that "[b]eing obedient," he took the medication and suffered the same extreme side effects as before. Id.

4

Hiasny allegedly refused to log that he issued the medication and did not respond to the plaintiff's interview request. Id.

For relief, the plaintiff seeks damages and termination of the defendants' employment. Id. at 4.

C.    Analysis

A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when he or she acts with deliberate indifference to the serious medical need of an incarcerated individual. Cesal v. Moats, 851 F.3d 714, 720-21 (7th Cir. 2017) (citing Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)). To state a claim for deliberate indifference for deficient medical care, a plaintiff "must allege an objectively serious medical condition and an official's deliberate indifference to that condition." Id. at 721 (quoting Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)). An objectively serious medical need is one that has either been diagnosed by a physician and demands treatment or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (quoting King v. Kramer, 680 F.3d 1013, 1018 (7th Cir. 2012)). The deliberate indifference standard is subjective and requires a plaintiff to allege that the official knew of, but disregarded, a substantial risk to the incarcerated individual's health. Id. (citing Farmer v. Brennan, 511 U.S. 825, 836-38 (1994); Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005)).

The plaintiff may proceed on an Eighth Amendment claim against Flarity in his individual capacity for allegedly failing to obtain medical help for the plaintiff when he was suffering severe adverse side effects from Famotidine.

5

The plaintiff alleges that Hiasny told him that the HSU gave Hiasny permission to distribute Famotidine to the plaintiff. The plaintiff allegedly told Hiasny that the medication had been discontinued but the plaintiff took the medication anyway. The plaintiff does not allege that Hiasny forced him to take the medication or that he explained to Hiasny that he would become ill if he took it. The plaintiff's allegation that the HSU authorized Hiasny to distribute medication to the plaintiff, and that Hiasny did so, does not amount to deliberate indifference. The court will dismiss Hiasny as a defendant.

The plaintiff also has not stated a claim against Martan. It is not clear that the plaintiff intended to bring a claim against Martan because in the complaint he says that Martan is a defendant "for informational purposes only." Dkt. No. 1 at 1. Later, the plaintiff alleged that after his neighbor pushed the emergency cell button for help, Martan contacted HSU but help from the HSU didn't arrive. The plaintiff does not state that Martan had any involvement other than contacting HSU. The plaintiff may not proceed on a claim against Martan for violation of his constitutional rights.

### III. Motion to Appoint Counsel (Dkt. No. 4)

The plaintiff has filed a motion asking the court to appoint counsel to represent him. Dkt. No. 4. He states that the issues involved in this case are complex, that he lacks the ability to properly investigate his claims and that the case will require considerable discovery concerning the identity of witnesses. Id. at 1. The plaintiff also asserts that he has limited knowledge of

6

the law and that he has no high school or college education. Id. The plaintiff says that he wrote to three attorneys requesting their assistance. Id.

In a civil case, the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654-55 (7th Cir. 2007)). And, given the low supply of *pro bono* counsel resources, the court may also consider the merits of a plaintiff's claim and what is at stake. Watts v. Kidman, 42 F.4th 755, 763-64 (7th Cir. 2022).

To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Auth., 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To demonstrate that he satisfied the first prong, the plaintiff must show that he

contacted at least three lawyers and provide the court with the lawyers' names, their addresses, how and when the plaintiff attempted to contact the lawyer and the lawyers' responses.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490-491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The plaintiff says that he wrote to three attorneys requesting their assistance, but he has not submitted copies of the letters he sent or included the names of the lawyers he contacted. The plaintiff has not satisfied the

threshold requirement to prove that he made a reasonable attempt to find a lawyer on his own. Even if he had, the court would deny his request for counsel. The plaintiff's filings are clear and persuasive and demonstrate that he can advocate for himself and communicate well. The court is allowing him to proceed on a discrete claim against one defendant. That claim is not complex. It involves an incident that he described in the complaint and of which he has personal knowledge. The plaintiff's filings show that he is capable of conducting discovery and responding to a motion for summary judgment. After the defendant answers the complaint, the court will issue a scheduling order that contains information about the discovery process. The court will deny without prejudice the plaintiff's motion to appoint counsel.

## IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 4.

The court **DISMISSES** defendants CO Hiasny and Sgt. Martan.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendant Lt. Flarity. Under the informal service agreement, the court **ORDERS** defendant Flarity to file a responsive pleading to the complaint within sixty (60) days.

9

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$250.88** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Waupun Correctional Institution, where the plaintiff is confined.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

---

[1] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

10

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 21st day of May, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

11